oral argument, 15 minutes per side. Mr. Kline for the appellant. Good morning, your honor. May it please the court, I'm Richard Kline representing Jason Simmons. I'd ask to reserve three minutes for rebuttal. This case presents the issue of how does a district court apply the Waller test in a situation where it's asked to   exclude members of the public from the gallery during trial. The standard of review, I believe, is a de novo review. And I know the court carefully reads the record in these cases, but I do want to point out a couple of facts that I think are really important in this case. The trial in this case consisted of two witnesses. One witness was apparently a law enforcement officer. I can't tell if Officer Taylor was actually a DEA agent, or if he was local law enforcement working in a task force, which is what it appears to me. But the second witness was Anthony Nixon, and Anthony Nixon was an informant, a co-defendant, if you will. Before the government called Nixon to the stand, the government expressed its concern that Mr. Nixon might be influenced by the fact that three other co-defendants in the case were in the gallery of the courtroom. Barbie, Helms, and Dawson were those three names, so that we can keep the players straight. The record's clear. The government never said to Mr. Nixon that Barbie, Helms, and Dawson are in the courtroom. There's no evidence that Nixon even knew that they were there. Nixon never expressed any fear or any feelings of intimidation to anyone. The only expression of that fear or concern is that the government expresses to the court, I'm afraid that that might occur. And that's really the essence of what is said. In response to that fear, the judge, the district court, turns to the defense counsel and says, what do you say? Defense counsel says, we have a Sixth Amendment right to a public trial. We want a public trial. And the court then says, in order to err on the side of caution, I'm going to exclude these three men from the courtroom. What's also unclear from the record is whether there was anyone else in the gallery. There's no evidence in the record one way or another to indicate whether that means that the court literally cleared the courtroom of all spectators, or if this were three out of 100 spectators. There's simply nothing in the record that lets us know the answer to that question. The court's decision, for lack of a better term, by its terms, was specific to these three individuals. So if we just take that decision on its terms, that would seem to be just excluding those three people rather than clearing the entire courtroom. He didn't say nobody's permitted and don't let anybody in the doors. He just said remove those three people. You're correct, Your Honor. He said remove those three people. However, I'm sorry, Judge. I don't mean to cut you off, but if we look at these factors, let's say there are four, and the first one we're looking for with a substantial reason for closure, and then the second, it must be no broader necessary to protect that interest, and then the reasonable alternative. So where would you focus here mainly? It seems to me that if there had been a threat and if that had been shown relative to these three, you would not question the fact that the judge could consider that. First of all, that would be an overriding or a substantial reason for closure, that if there were real threats, you would agree with that, right? Yes, Your Honor, and first let me just say that our position is that Waller requires the showing of an overriding concern, not a substantial concern. I understand the government's argument that other courts of appeals have diminished that in partial closure cases. We respectfully disagree with that argument, but I would agree. I'm sorry. Okay, I understand, and I appreciate you're making clear your position. But then, so I'm just trying to, so then the next is the closure must be no broader than necessary to protect that interest. If they had really threatened him and they were really concerned about him, you would have no concern that the judge would probably put them out of the courtroom. There's some possible alternatives, call them up and tell them don't act that way, but if that had happened, you would not be concerned. Sounds like to me your main issues relate to whether there were findings adequate to support the closure. Am I right about that? Yes, Your Honor. I would, as always, quibble slightly with that characterization. However you want to characterize it. And I respectfully, what I would say, Judge, is that the district court in this case did not make any findings that would support either an overriding or a substantial concern. And the reason that I say that is the district court made no inquiry. Every day in United States district courts, when there's trials going on, judges take a break. They would hire a witness to determine if the witness should be entitled to a Fifth Amendment privilege or other concerns. 20 minutes, 15 minutes, 5 minutes to bring Mr. Nixon out. Say to Mr. Nixon, these men want to observe your testimony. Does that present a fear on your part? Are you afraid of them? Have they tried to intimidate you? There's nothing in the record to show that the district court made any of those inquiries. And in fact, in fairness to the district court, I think the district court genuinely believed that it was not required to do those things. That it had the discretion to err on the side of caution. And that it could, in order to vindicate the government's right to present witnesses free of intimidation. We don't want to put judges in a straitjacket, but we want them to comply with the law. And so the question is, what is it that you think the judge was consciously bound to do? Be concrete about what it should have looked like. Yes, Your Honor, I think at a minimum, the district court had to make findings supported by facts in the record that there was an actual threat to this witness, or an actual attempt to intimidate this witness. That's the first thing that I would require. Secondly, I would require under the context of this fact, of this case, I would require the district court to hold a hearing and inquire of the witness himself. Would you require that in every case? That the judge actually inquire of the witness? I mean, there are other ways you can get information. Perhaps it would be a good thing to inquire of the witness in most cases. But would you make that an absolute requirement? In the context of this case, I would say that it's a requirement. But I would agree with you, Judge. There are other ways that the court could be satisfied that there's sufficient evidence to make the factual finding that an attempt to intimidate this witness has been made, or an attempt to influence this witness has been made. Well, can I just inject into your argument, maybe you could respond to this, the prosecutor did say something to the effect that I think disparaging comments have been made to the witness, that they weren't threats, but they were, I guess I think it was just something along the lines of disparaging. And then also that Mr. Simmons had inquired of the witness, are you really going to testify against me? And this made Nixon feel uncomfortable, and he was disquieted. And then in the context of that, the district court says something to the effect, he doesn't just say I'm just going to exclude these three witnesses for this testimony. He is concerned about the issue of intimidation and whether a witness's testimony might be influenced. Because he says so. So you're, I guess going back to my colleague's questions, you just don't think that he went far enough. Correct. To clearly have the concern that there might be some intimidation or effort to influence Mr. Nixon's testimony. It seems that that was in context connected to these three people who are, as I understand it, co-defendants in this drug conspiracy. I guess you have to look at this in context. Absolutely, Judge. I do think it is a decision that has to be made in the context of the setting where it occurs. I would point out to the court that Mr. Simmons apparently had visited Mr. Nixon at some point, but the government expressly described that meeting as one that did not include threats, but that Mr. Nixon was, as the court properly quoted, disquieted and uncomfortable. That's the way that the United States Attorney described Mr. Nixon's response to Mr. Simmons' visit. These three men obviously were not part of that visit. There's no evidence on the record to show that. Secondly, the district court said, I think the court does have the discretion if there is any possibility that it would be intimidating or possibly if it would influence a witness's testimony. And there's where I think the district court strayed from Waller. I think the district court's expression of that test was much broader than what Waller permits. I think the record before this district court was sufficient to justify the district court into making inquiry, but the district court did not. Instead, it simply acted. And that's where I think the problem lies in this case. We are balancing two very important rights, the constitutional right of the defendant to a public trial against the government's right to present its witnesses free from intimidation. And both of those rights need to be vindicated, absolutely. There's no question about that. This record may present a question that may give rise to further inquiry. The problem here is the district court never made that further inquiry. It simply acted to exclude 50 percent, to exclude these three men from observing 50 percent of the trial. We only had two witnesses. And the only witness that actually put Mr. Simmons in the soup, so to speak, was Mr. Nixon. And so the right to a public trial required more in this case. It required at a minimum that the district judge make some further inquiry. And I would suggest that Waller requires that he be convinced that there was an overriding concern and that he make specific factual findings so that you could review the adequacy of his decision. You're not suggesting anything like a mini trial or anything like that? No, Your Honor. I think I've seen it done in five or six minutes of court time, Your Honor. I don't think it's that complex. You bring the witness in. You do a voir dire. Are you aware that these men want to observe your testimony? Does that bother you? Have they threatened you? Are you afraid of them? Five or six questions. Okay. Thank you. Thank you, Mr. Kline. You'll have your rebuttal time. May it please the Court, Kevin Ritz for the United States. The district court here did nothing wrong when it asked three observers, three co-defendants, to leave the courtroom during Mr. Nixon's testimony. The partial courtroom closure in this case met both the Waller standard and the relaxed Waller standard that we believe this court should apply and we ask this court to affirm. First, on the question of what standard should apply, we've set that out in the brief that using the relaxed Waller standard makes the most sense in a case where only a few observers are asked to leave. There are diminished constitutional concerns when everyone else is welcome to attend. There is a potential audience that remains. Other courts, I should note, since Presley, have applied that relaxed standard. You had your opponent counsel was suggesting some things. I don't know if they're supported by the record, but there are only so many people in the courtroom. This reduced it down to a very small number and so on and so forth. Right. What do you say about that? Chief Judge Oliver, we do not disagree, first, with the characterization of the facts or the, shall we say, spartan nature of this colloquy in the record here. There is nothing in the record to tell us who else was in the courtroom. However, what we would submit is, and there is no dispute, that the ruling was limited to these three individuals, and it's the court's ruling that's what's at issue here. The ruling still allowed, whether there was people in the courtroom or not, for the opportunity for everyone else to be there, press, defendants, family, whoever. So I guess it's not three out of three that we're really analyzing. It's three out of infinity, really. So we obviously want to put district judges in a situation where, when they're confronted with trying cases, lots of fact situations, lots of concerns about potential witnesses and all that, in a straight jacket, as I said before. But still, we've got to have some manageable standard, something that's not, the U.S. attorney says that we're concerned this witness might be an intimidated judge, and the judge says, well, if you feel that way. I'm not saying that happened here. I understand. So if you feel that way, I'll just exclude them. Let's start there. I don't think you would agree with that, would you? No, Your Honor. I would not agree that if the U.S. attorney came to me and said, we just think we're worried about this witness. The witness has been shaky. We've interviewed him two or three times. He's back and forth on what he has to say. He's nervous as it is. To see another co-defendant out there that he's known all of his life and that he was allegedly involved with in this crime, it's going to probably unnerve him. So we'd like it better if he didn't have to face them. I think he'd be more likely to testify. Would that be enough? Well, the more the prosecutor says, the more there could be a basis, Your Honor. Would that be enough? With nothing more, probably not, Your Honor. However, a couple of things there. The broader context of this case, Your Honor, at the time that this trial started, there were 16 defendants that had pled guilty out of this 21-person drug conspiracy. This judge knew this case. This judge knew that Mr. Nixon was the ringleader of this drug conspiracy. These three co-defendants who were in the courtroom had pled guilty. One of them had actually even been sentenced. And there is no indication. In fact, this record suggests that they did not cooperate. Mr. Simmons obviously did not cooperate with the government. He was on trial. Mr. Nixon obviously did cooperate with the government. That's what this record shows us. And if you have facts where the defendant, Mr. Simmons, approaches Mr. Nixon a couple of times in the week before trial and says, Are you really going to do this? Are you really going to do this? And then Mr. Nixon, it is in the record that he's actually a very short person. Mr. Simmons, large person. There has been these disparaging remarks said to Mr. Nixon in the past. By whom? It's not in the record, Your Honor. Because there wasn't an inquiry. There was no inquiry, Your Honor. That's a problem. It is a problem, Your Honor. I want to say, though, that if your question, Chief Judge Oliver, is can the court rely only on a government proffer, we would actually say yes. Okay, but I don't have – so suppose there is a proffer. I'm not – suppose you could rely on a proffer. But the question is what kind of information is the prosecutor proffering to the court and what substantiation does the prosecutor offer in support of it? Of course, Your Honor. And I wish I had more to work with what the prosecutor said. I wish I had more to work with what the court said. We have what we have. In this case, the defendants knew each other. I mean this was a rural county, this large drug conspiracy led by Mr. Nixon. These were people who all knew each other. A lot of those cases. Yes, of course, Your Honor. And what I'm saying is that that had been fleshed out before this judge, who had handled all of these defendants, had seen all these defendants come before him several times, had had plea hearings for these defendants, knew that Mr. Nixon had sent Barbie and Dawson to go get cocaine, knew that they knew each other. In this particular transcript, that is not all fleshed out. I can't hide behind – So far the rule is, you know, at the prosecutor's request, the district court can exclude co-defendants, period. That's what it sounds like, which is not, I think, the law. That's not the rule we're urging, Your Honor. We're not far from it. We would disagree, Your Honor. We would submit that the prosecutor made a proffer. There is evidence in the record to support both the proffer and what the court found. And I do want to say we would disagree with opposing counsel that there is no requirement that we've seen in the law that there has to have been an actual threat or an actual effort in the past by this particular person to intimidate this particular person. The risk of intimidation, the potential for witness intimidation, is what needs to be established, and there needs to be findings, of course, to – What was the potential, other than they were co-defendants? You always have problems, built-in tensions, and so forth. But what are the risks that were identified? I mean, the prosecutor was talking to the witnesses, certainly the witness who was going to take the stand. Right, Your Honor. The defendant knows the person. He's not precluded. Unless the court had found that – instructed him not to do so. I mean, there's some discretion in the court to say to witnesses, you know, you're not allowed to affiliate with each other or whatever. I mean, there are limits on that. Yes, Your Honor. But that hadn't happened. Not in this case. However, those three defendants pled guilty, did not cooperate. In the context of a 21-member drug conspiracy, where this ringleader has obviously decided to cooperate with the government and obviously looking for a benefit in his case, and these other people have obviously decided not to go that route. Haven't been sentenced yet, have they? One had been sentenced. Actually, I think just two days before this trial started, one had been sentenced. The other two had pled. They want to know. They would want to know what's being said in that trial. I think that's right, Your Honor, and I don't think it's that much of an inference when you combine all of these things to say they're there for the same reason that perhaps Mr. Simmons went to go see Mr. – are you really going to do this? I mean, is this – I mean, are you really going to, you know, cooperate? People have other words for that. Against this other guy who we all know, we all – Mr. Ritz, I mean, the concern I have with your position is not so much about the findings, you know, adequacy of findings. That sort of concerns whether the district court made certain determinations. It's really the basis for them. I mean, there's no inquiry here at all. We're just speculating about whether some of these, you know, this sort of sprinkling of facts that we can glean from the record might have affected this witness. I mean, the findings are as good as the foundation for them, and the district court asked not a single question here. I mean, isn't this absence of a foundation for whatever findings he did make something that requires us to vindicate, you know, a right that's spelled out in black and white in the Constitution? Not in this case, Your Honor, and if I could explain why. The values behind the rights, ensuring that the public has an opportunity to see what's going on, ensuring that the players in this courtroom are being kept aware of their immense responsibilities, the judge, the prosecutors, and discouraging perjury, encouraging witnesses to come forward. There is a disconnect, in our view, if this court decides to reverse this conviction based on this colloquy and the exclusion of these three individuals and vindicating those rights behind the Sixth Amendment public trial right. None of those rights, none of those values, I'm sorry, interests, values behind that right were harmed or jeopardized in this case at all. How can you say that? I mean, you can't just kick people out of the courtroom and say, you know, the right to a public trial hasn't been harmed at all. It's been harmed partially, and so we have a partial closure. And as you know, we have to figure out what kind of standard, and you want to have a substantial reason. I understand that. Yes, yes, Your Honor. That's a substantive issue. How important must this interest be? Right, Your Honor. I guess what I'm questioning you about is more of a procedural one. I mean, what kind of process, what kind of record must the court make before we're going to say your substantive determination is good enough? Yes. Your Honor, I think the cases tell us, the cases that we cite, there are lots of cases out there, tell us that in a case where you're excluding the defendant's family, you've got to do more. Both perhaps the government or whoever is requesting for the closure needs to do more and the court needs to do more. It sounds like substance. Well, I do believe that the nature of the process is a function of the scope of the closure, and here we have three people, three individuals. This is a de minimis foundation here pretty much, and so it sounds like you're kind of arguing, well, it's a de minimis closure, so it's okay. We're not arguing that. Actually, we thought about arguing that, Your Honor. There are cases that talk about de minimis closures where, you know, somebody has basically just walked out of the courtroom for two seconds and something happens that's not testimony, that kind of thing. That's not what happened. We had one witness, and it was obviously for the full testimony of this witness, and we understand the point. We understand why the opposing counsel makes the point that this was a two-witness trial. I'm not sure that's relevant. I think the inquiry is really the same. The test is the same, whether we had a hundred-witness trial or a two-witness trial. But, yes, it was not a de minimis closure in the sense that some of the other courts have. Let me give you my other concern here. So we have the foundational concern. The other concern is the standard that the district court seems to apply here. Again, the backdrop is this is a serious constitutional right, and the court says, well, I want to avoid, I think the words were, any possibility that this witness might be nervous, and so I'm going to err on the side of caution. Well, you know, any possibility that the witness might be nervous and I'm not going to bother to ask the witness himself, that's not something. Is that something you think we should say is an appropriate way to go about this? In this case, we're asking this court to affirm. So we're asking this court not to find anything wrong with that under the test. That's not my question. I know what you're asking. Is that standard one that our court should approve? No. You shouldn't be writing that in the opinion in this case. Well, that's what he did. But the question. You're approving it, right? No, Your Honor. The question of what the district court said is obviously relevant to what this court does and how this court applies either the Waller test or the relaxed Waller test, but the question is whether what the district court did meets that test. And what he said and the way he articulated it isn't necessarily, I guess, what you would. Well, he said, you know, he seems to apply. Is it fair to say that the rationale for his decision, net, is I want to avoid any possibility that this witness is going to be scared? I think, no, Your Honor. It's not a fair reading in this transcript? The fairer reading, I don't think that's a fair reading. And I'm trying to be candid with the court. No, absolutely. The fairest reading we would submit is that because of these defendants, who I've had in front of me, have pled guilty, I know what they did, I know their connection with Mr. Nixon and this drug conspiracy. There is a possibility. Let me read to you what the district judge said. But I think the court does have the discretion. If there is any possibility that it would be intimidating or possibly if it would influence a witness's testimony, then I think the court probably would rather side on being cautioned. Basically, it kind of gets a little garbled from there. That seems to be the distillation of his reasoning here. I think it's an argument. Any possibility test is just not going to work. I don't disagree, Your Honor. And I guess that's not the test we're urging this court to adopt. And if that is how he articulated it in the broad sense, the application of whatever test he was using is that he found that these three individuals could potentially pose a risk of intimidating this particular witness. We've talked about the basis for that and what there is in the record to support that. I guess, in other words, we read that as a finding that there is this risk, and it's a specific enough finding we would submit. The court seems to say that it wants to err on the side of caution. Certainly. Okay. But you can't err on the side of violating the Constitution, can you? No. And so let's say, I don't know, the factors in front of the court are sort of an equipoise. There seems to be a bit of a risk, not a big risk, sort of a moderate or minor risk that this witness might be intimidated, but it's not a full closure. It's an equipoise. Do we just err? If we're going to make a mistake here, I don't want to make the mistake of having the witness be intimidated. I'm going to make the mistake, if there's going to be an error, on violating his Sixth Amendment rights. I mean, is that acceptable? Under the circumstances of this case, yes. And so it's interesting, because you used the word err on the side of rights, which kind of loads the phrase anyway. I suppose a judge, if he had a close case, would say, give me the facts. I've got a lot of evidence here that a person might be intimidated. There's some they might not be. I think it's in my purview to say that since there is a substantial amount that says it would be, I'm going to be cautious. And I think that would probably be permissible, but that's not what happened here, I don't think. We would submit it's the same. We would submit what happened here is good enough under the test that we've urged and as we've explained in the brief. I don't know if he said err. You don't need to send us a letter if you come back and say err. I'm not sure. I'm looking at it here. That was my recollection from reading this stuff, but I'm not going to attribute that to the judge unless somebody finds that word and you need not worry about a mistake on that. He said side on the side of being cautious. If there are no questions, we ask this Court to affirm. Thank you. Thank you, Mr. Ritz. Judge Kessler, you are correct. On page 2281 of the record the judge said that I think the Court probably would rather side on being cautioned. Right. Yeah, the word err is what I added that, I guess, in my memory. But clearly that's the import of what the judge was saying. And there's nothing wrong with doing that, is there, if the facts have been developed in the case. It's not always clear cut. You don't want someone harmed. You also want to make sure a person's testimony is not unduly influenced. So if you make a good record, there would be no harm in saying, right, that you would side, in this case, on the side of being cautious. I don't think that would be. I would agree with you, Judge. And I think Waller actually teaches us that because Waller says we are to balance these two interests. The problem that I have is the district court appeared to completely disregard the Sixth Amendment interest and put all of the balance in the favor of the prosecution's right to have its witnesses testify free from fear or the risk of intimidation. And I know that the government did not expressly argue harmless error, but the essence, as I gathered it, the essence of his argument was, in this case, it was no harm, no foul. Well, clearly, Arizona v. Fomenante says we can't do that. When it's a Sixth Amendment violation, it's not a harmless error analysis. And finally, I guess I would say one can imagine a record where it's perfectly appropriate to exclude these three witnesses. We do not have that record in this case. The facts were not developed sufficiently to support the district court's action, and we ask that you reverse on that basis. Thank you. Okay. Thank you, counsel, for your arguments today. And, Mr. Klein, I do note that you have taken this case under the Criminal Justice Act. For that, we are thankful. I'm sure that Mr. Simmons is appreciative, and certainly this is in the interest of the system at large. So thank you very much, Mr. Ritz. We obviously appreciate your appearance and argument today here as well. So the case will be submitted, and there being no further cases to be argued, I know there's a case on the briefs, which you need not call. You may adjourn court.